UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FREDERICK MAWALLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil  Action  No. 06-0584 (RMC) |
| | ) | ECF |
| MICHAEL CHERTOFF, | ) | |
| SECRETARY, | ) | |
| U.S. Dept. of Homeland Security, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, Michael Chertoff, Secretary of Homeland Security, United States

Department of Homeland Security ("Department"), Eduardo Aguirre, Director, U.S. Citizenship

and Immigration Service ("USCIS"), and Richard Caterisano, District Director, USCIS,

Baltimore, Maryland, respectfully move the Court, pursuant to Rule 56 of the Federal Rules of

Civil Procedure, for an order granting Defendants summary judgment on the grounds that no

genuine issue of material fact exists and Defendants are entitled to judgment as a matter of law.

The decision under review, USCIS's decision to deny Plaintiff's Form I-485, Application

for Adjustment to immigration status, was in all respects reasonable, lawful and supported by

substantial record evidence.  In support of this Motion, Defendants respectfully submit the

attached memorandum of points and authorities, a statement of material facts not in genuine

dispute, and a proposed order.

Respectfully submitted,

_____
/s/
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/
KAREN L. MELNIK, D.C. BAR # 436452
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0338

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FREDERICK MAWALLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil  Action  No. 06-0584 (RMC) |
| | ) | ECF |
| MICHAEL CHERTOFF, | ) | |
| SECRETARY, | ) | |
| U.S. Dept. of Homeland Security, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' LCvR 7(h) STATEMENT OF MATERIAL FACTS
WITH RESPECT TO WHICH THERE IS NO GENUINE ISSUE**

In connection with the submission of Defendants' Motion for Summary Judgment

pursuant to LCvR 56.1, Defendants, Michael Chertoff, Secretary of Homeland Security, United

States Department of Homeland Security ("Department"), Eduardo Aguirre, Director, U.S.

Citizenship and Immigration Service ("USCIS"), and Richard Caterisano, District Director,

USCIS, Baltimore, Maryland, respectfully submit the following statement of material facts as to

which there is no genuine dispute:

1.      On May 15, 2002, Intelsat Global Service Corporation ("Intelsat"), filed an Immigrant

        Visa Petition (Form I-140) for Plaintiff, pursuant to section 203(b)(2) of the Immigration

        and Nationality Act ("INA").  See Administrative Record ("AR") at 200-02.  That section

        of the INA pertains to "[a]liens who are members of the professions holding advanced

        degrees or aliens of exceptional ability."  See INA § 203(b)(2).

2.      The USCIS approved the I-140 on October 31, 2002.  AR at 84, 180, 198, 200, 289-90.

3.      On April 29, 2004, Plaintiff filed an Application to Adjust Status, Form I-485.  AR at

148-52.

4.    On September 17, 2004, USCIS received a letter from Intelsat stating that Plaintiff was

no longer employed by the company, and that Intelsat wished to withdraw the I-140

petition they had filed on Plaintiff's behalf.  AR at 196-197.

5.    On March 11, 2005, USCIS advised Intelsat that the I-140 petition had been

automatically revoked, pursuant to 8 CFR 205.1(a)(3)(iii)(C).[1]  AR at 195.

6.    On March 11, 2005, USCIS issued to Plaintiff a Notice of Intent to Deny ("NOID") the

I-485 Application for Adjustment.  The NOID stated that Plaintiff did not appear eligible

to adjust to lawful permanent resident status since there was no longer an immigrant visa

immediately available to him.  AR at 96-97, 181-83, 261-63.

7.    The NOID noted that the American Competitiveness in the Twenty-First Century Act of

2002 ("AC21"), Section 106(C),[2] would still permit Plaintiff to adjust status, despite the

ground of ineligibility, if the Application for Adjustment had been pending for 180 days or

more, and if Plaintiff could establish that he had a bona fide offer of employment from a new

employer in a same or similar occupation.  AR at 261-62.

8.    In response to the NOID, Plaintiff submitted a written request on April 6, 2005, to have his

---

[1]  8 C.F.R. 205.1(a(3)(iii)(C) provides that approval of a petition or self-petition is automatically
revoked, *as of the date of approval*, upon written notice of withdrawal filed by the petitioner with
any officer of the Service who is authorized to grant or deny petitions if it occurs before
adjustment of status becomes final (emphasis added).

[2]  The American Competitiveness in the Twenty-First Century Act of 2002, P.L. 106-313 (and
related legislation at P.L. 106-311 and 106-396) is commonly referred to as "AC-21."  Section
106(C) of that law states that an I-140 petition for an individual whose application for adjustment
of status has been filed and remained unadjudicated for 180 days or more, shall remain valid with
respect to a new job, if the individual changes jobs and the new job is in the same or similar
occupational classification as the original job for which the petition was filed.

2

I-485 considered under AC21, together with an offer of employment from Bethesda Asphalt & Bituminous Company, for the position of Testing Engineer.  AR at 110-17, 265-72.

9.     On June 29, 2005, USCIS denied Plaintiff's I-485 concluding that the record did not contain evidence that Plaintiff was the beneficiary of an approved immigrant visa petition (I-140).  AR at 34-35, 94-95, 145-46.  In addition, the denial noted that the I-485, Application to Register Permanent Residence or Adjust Status, had been pending for a period of *less than 180 days* when the withdrawal of the I-140 was requested by Intelsat on September 17, 2004.  AR at 34, 94, 145..  Therefore, Plaintiff was  ineligible to adjust status under the provisions of AC21.[3]  <u>Id.</u>

10.    On July 18, 2005, Plaintiff filed a Motion to Reopen and/or Reconsider the denial of the Form I-485, Application to Register Permanent Residence or Adjust Status.  Plaintiff argued that USCIS erred as a matter of law in its interpretation of section 106(C) of AC21, because he claimed that his I-485 had been pending for 180 days at the time that the I-140 was revoked.  AR at 137-43.

11.    On August 29, 2005, USCIS dismissed Plaintiff's Motion to Reopen and/or Reconsider.  USCIS cited 8 CFR § 103.5(a)(4) as the basis for the dismissal, because Plaintiff had failed to provide new facts to be proved, and did not demonstrate that the decision was based on an incorrect application of the law.[4]  AR at 93, 134, 273-74, 279.

---

[3]  In the first paragraph, the NOID erroneously notes that the filing date of the I-485 is April 29, *2005*.  However, the third paragraph of the NOID cites the correct date, April 29, *2004*.  It is the 2004 date that USCIS used in concluding that the adjustment application had been pending for less that 180 days when the withdrawal of the I-140 was requested.

[4]  8 C.F.R. § 103.5(a)(2) states the requirements for a motion to reopen.  Petitioner must provide new facts, and such facts must be supported by documentary evidence.  8 C.F.R. § 103.5(a)(3)

12.    On September 27, 2005, Plaintiff filed another Motion to Reopen and/or Reconsider regarding the revocation of Form I-130, the Immigrant Petition for Alien Worker.  AR at 92-103.

13.    On March 13, 2006, USCIS dismissed Plaintiff's motion pursuant to 8 CFR 103.5(a)(4), because he neither provided new facts to be proved nor articulated reasons for reconsideration.  AR at 2.

14.    On October 5, 2005, Plaintiff filed a second Form I-140, Petition for Alien Worker, pursuant to INA section 203(b)(2)(B)(I).[5]  ROP at 86-89.  Plaintiff sought an exemption of the job offer requirement by virtue of a national interest waiver.  Id.

15.    On May 24, 2006, USCIS issued a Notice of Action, Form I-797, regarding that petition, and requested evidence demonstrating that Plaintiff satisfies the three-prong test as set forth by the Administrative Appeals Unit, in Matter of New York State  Dept. of Transportation (AAO 1998), to determine whether a waiver of job offer is in the national interest.[6]  AR at 3-4.  This second Petition for Alien Worker is still pending.

---

provides the requirements for a motion to reconsider.  Petitioner must state the reasons for reconsideration and be supported by pertinent decisions to establish that the decision was based on an incorrect application of law or Service policy.  8 C.F.R. § 103.5(a)(4) states that motions that do no meet the requirements shall be dismissed.

[5]  Section 203(b)(2)(B)(I) provides that the Attorney General may waive the requirement that an alien's services in the sciences, arts, professions, or business be sought by an employer in the United States.

[6]    The three-prong test provides that Petitioner must demonstrate that (1) the alien seeks employment in an area of substantial intrinsic merit; (2) the proposed benefit will be national in scope; and (3) the national interest would be adversely affected if a labor certification were required for the alien.  Matter of New York State Dept. of Transportation, 22 I&N Dec. 215, 217-18.

Respectfully submitted,


_____/s/_____
KENNETH L. WAISTEIN, D.C. Bar # 451058
United States Attorney




_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney




_____/s/_____
KAREN L. MELNIK, D.C. Bar # 436452
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C.  20530
(202) 307-0338

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FREDERICK MAWALLA,          )
                                  )
                Plaintiff,      )
                                  )
                v.            )      Civil Action No. 06-0584 (RMC)
                                  )      ECF
MICHAEL CHERTOFF,          )
 SECRETARY,              )
 U.S. Dept. of Homeland Security, et al.,  )
                                  )
               Defendants.   )
——————————————————)

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants, Michael Chertoff, Secretary of Homeland Security, United States Department of

Homeland Security ("Department"), Eduardo Aguirre, Director, U.S. Citizenship and Immigration

Service ("USCIS"), and Richard Caterisano, District Director, USCIS, Baltimore, Maryland move for

summary judgment in this case. Plaintiff challenges USCIS's June 29, 2005, denial of Plaintiff's

application for Adjustment under the Administrative Procedure Act (APA), 5 U.S.C. § 551 et seq.

Compl. at 4. The USCIS's June 29, 2005, decision was in all respects reasonable, lawful, and

supported by substantial record evidence. ROP at 34-35, 94-97, 145-46, 181-83, 261-63. The USCIS

carefully reviewed the complete record in this matter and determined that Plaintiff's Form I-485,

Application to Register Permanent Resident or Adjust Status, should be denied. Thus, the decision at

issue in no way violated the requirements of the APA.

## I.    Factual and Procedural Background

On May 15, 2002, Intelsat Global Service Corporation ("Intelsat"), filed an Immigrant Visa

Petition (Form I-140) for Plaintiff, pursuant to section 204(a)(F) of the Immigration and Nationality

Act ("INA") seeking classification under section 203(b)(2).  <u>See</u> Administrative Record ("AR") at

200-02.  That section of the INA pertains to "[a]liens who are members of the professions holding

advanced degrees or aliens of exceptional ability."  <u>See</u>  INA § 203(b)(2).  The USCIS approved the

I-140 on October 31, 2002.  AR at 84, 180, 198, 200, 289-90.  On April 29, 2004, Plaintiff filed an

Application to Adjust Status, Form I-485.  AR at 148-52.  On September 17, 2004, USCIS received a

letter from Intelsat stating that Plaintiff was no longer employed by the company, and that Intelsat

wished to withdraw the I-140 petition they had filed on Plaintiff's behalf.  AR at 196-97.  On March

11, 2005, USCIS advised Intelsat that the I-140 petition had been automatically revoked, pursuant to 8

CFR 205.1(a)(3)(iii)(C).[1]  AR at 195.

On March 11, 2005, USCIS issued to Plaintiff a Notice of Intent to Deny ("NOID") the I-485

Application for Adjustment.  The NOID stated that Plaintiff did not appear eligible to adjust to lawful

permanent resident status since there was no longer an immigrant visa immediately available to him.

However, the NOID noted that the American Competitiveness in the Twenty-First Century Act of

2002 ("AC21"), Section 106(C),[2] would still permit Plaintiff to adjust status, despite the ground of

ineligibility, if the Application for Adjustment had been pending for 180 days or more, and if Plaintiff

could establish that he had a bona fide offer of employment from a new employer in a same or similar

---

[1] 8 C.F.R. 205.1(a(3)(iii)(C) provides that approval of a petition or self-petition is automatically revoked, *as of the date of approval*, upon written notice of withdrawal filed by the petitioner with any officer of the Service who is authorized to grant or deny petitions if it occurs before adjustment of status becomes final (emphasis added).

[2] The American Competitiveness in the Twenty-First Century Act of 2002, P.L. 106-313 (and related legislation at P.L. 106-311 and 106-396) is commonly referred to as "AC-21."  Section 106(C) of that law states that an I-140 petition for an individual whose application for adjustment of status has been filed and remained unadjudicated for 180 days or more, shall remain valid with respect to a new job, if the individual changes jobs and the new job is in the same or similar occupational classification as the original job for which the petition was filed.

occupation.  AR at 261-62.  In response to the NOID, Plaintiff submitted a written request on April 6,

2005, to have his I-485 considered under AC21, together with an offer of employment from Bethesda

Asphalt & Bituminous Company, for the position of Testing Engineer.  AR at 110-17, 265-72.

On June 29, 2005, USCIS denied Plaintiff's I-485 concluding that the record did not contain

evidence that Plaintiff was the beneficiary of an approved immigrant visa petition (I-140).  AR at 34-

35, 94-95, 145-46.  In addition, the denial noted that the I-485, Application to Register Permanent

Residence or Adjust Status, had been pending for a period of less than 180 days when the withdrawal

of the I-140 was requested by Intelsat on September 17, 2004.  AR at 34, 94, 145.  Therefore,

Plaintiff was  ineligible to adjust status under the provisions of AC21.[3]  Id.

On July 18, 2005, Plaintiff filed a Motion to Reopen and/or Reconsider the denial of the Form

I-485, Application to Register Permanent Residence or Adjust Status.  Plaintiff argued that USCIS

erred as a matter of law in its interpretation of section 106(C) of AC21, because he claimed that his

I-485 had been pending for 180 days at the time that the I-140 was revoked.  AR at 137-43.  On

August 29, 2005, USCIS dismissed Plaintiff's Motion to Reopen and/or Reconsider.  USCIS cited 8

CFR § 103.5(a)(4) as the basis for the dismissal, because Plaintiff had failed to provide new facts to

be proved, and did not demonstrate that the decision was based on an incorrect application of the

law.[4]  AR at 93, 134, 273-74, 279.

---

[3]  In the first paragraph, the NOID erroneously notes that the filing date of the I-485 is April 29, *2005*.  However, the third paragraph of the NOID cites the correct date, April 29, *2004*.  It is the 2004 date that USCIS used in concluding that the adjustment application had been pending for less that 180 days when the withdrawal of the I-140 was requested.

[4]  8 C.F.R. § 103.5(a)(2) states the requirements for a motion to reopen.  Petitioner must provide new facts, and such facts must be supported by documentary evidence.  8 C.F.R. § 103.5(a)(3) provides the requirements for a motion to reconsider.  Petitioner must state the reasons for reconsideration and be supported by pertinent decisions to establish that the decision was based

3

On September 27, 2005, Plaintiff filed another Motion to Reopen and/or Reconsider regarding the revocation of Form I-130, the Immigrant Petition for Alien Worker. AR at 92-103. On March 13, 2006, USCIS again dismissed Plaintiff's motion pursuant to 8 CFR 103.5(a)(4), because he neither provided new facts to be proved nor articulated reasons for reconsideration. AR at 2.

Recently, on October 5, 2005, Plaintiff filed a second Form I-140, Petition for Alien Worker, pursuant to INA section 203(b)(2)(B)(I).[5] AR at 86-89. This time, Plaintiff sought an exemption of the job offer requirement by virtue of a national interest waiver. Id. On May 24, 2006, USCIS issued a Notice of Action, Form I-797, regarding that petition, and requested evidence demonstrating that Plaintiff satisfies the three-prong test as set forth by the Administrative Appeals Unit, in Matter of New York State Dept. of Transportation (AAO 1998), to determine whether a waiver of job offer is in the national interest.[6] AR at 3-4. This second Petition for Alien Worker is still pending.

In his current complaint before this Court, Plaintiff claims that USCIS denied his Form I-485 in contravention of AC21, because Plaintiff submits that his Form I-485 had been pending for over 180 days. Compl. at 3. However, Plaintiff relies on the date that USCIS advised Intelsat that the

---

on an incorrect application of law or Service policy. 8 C.F.R. § 103.5(a)(4) states that motions that do not meet the requirements shall be dismissed.

[5] Section 203(b)(2)(B)(I) provides that the Attorney General may waive the requirement that an alien's services in the sciences, arts, professions, or business be sought by an employer in the United States.

[6] The three-prong test provides that Petitioner must demonstrate that (1) the alien seeks employment in an area of substantial intrinsic merit; (2) the proposed benefit will be national in scope; and (3) the national interest would be adversely affected if a labor certification were required for the alien. Matter of New York State Dept. of Transportation, 22 I&N Dec. at 217-18.

Form I-140 had been automatically revoked (March 11, 2005), rather than the date that the Form I-140 was *automatically* revoked (October 31, 2002), pursuant to 8 CFR 205.1(a)(3)(iii)(C). Compl. at 6. Plaintiff further claims that the Defendants' actions violated the APA, because their decision was arbitrary, capricious, an abuse of discretion, or not in accordance with the law. Compl. at 9. Plaintiff is requesting that this Court require USCIS to re-adjudicate and to approve his Form I-485, in light of the alleged error committed by USCIS regarding the controlling date of the I-140 revocation.

## II.     Argument

### A.     Standard of Review

This Administrative Procedure Act (APA) dispute requires this Court to review the USCIS's administrative decision construing the INA, Sections 204(j) [8 U.S.C. § 1154]; 205 [8 U.S.C. § 1155]; 245(a) [8 U.S.C. § 1255(a)]; and AC 21 § 106(C). Section 706 of the APA provides that a final agency action may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 413-14 (1971). Agency action enjoys a "presumption of regularity," and a plaintiff faces a heavy burden in establishing that an agency's conduct violates this standard. Id. at 415; American Fed. of Govt. Employees v. Reagan, 870 F.2d 723, 727 & n. 33 (D.C. Cir. 1989) (reviewing cases). It is a basic tenet of administrative law that judicial review of informal agency adjudication is "narrow" and the Court is not entitled to substitute its judgment for that of the agency. Overton Park, 401 U.S. at 416; Vermont Yankee Nuclear Power Corp. v. NRDC, 435 U.S. 519, 558 (1978); Doraiswamy v. Secretary of Labor, 555 F.2d 832 (D.C. Cir. 1976).

This case involves a decision of the USCIS construing the language of the INA and the AC21, which is within the Department's statutory and regulatory authority. To the extent that the USCIS's

construction of a statute is at issue, the Court must apply the familiar two-step <u>Chevron</u> analysis.  If

the Court determines that the statutory provision is clear, the Court's inquiry ends.  <u>Chevron, U.S.A.,</u>

<u>Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 843 (1984).  If the provision is silent

or ambiguous regarding a specific issue, the Court must consider "whether the agency's answer is

based on a permissible construction" of the statute.  <u>Id</u>.  To survive judicial scrutiny, the agency's

interpretation "need not be the best or most natural one," so long as it is reasonable.  <u>Pauley v.</u>

<u>BethEnergy Mines, Inc.</u>, 501 U.S. 680, 702 (1991).  Indeed, the interpretation of a statute by the

agency charged with its administration generally is entitled to "great deference."  <u>Udall v. Tallman,</u>

380 U.S. 1, 16 (1965); <u>Chevron</u>, 467 U.S. at 844 ("We have long recognized that considerable weight

should be accorded to an executive department's construction of a statutory scheme it is entrusted to

administrator"); <u>Good Samaritan Hosp. v. Shalala</u>, 508 U.S. 402, 409 (1993).  Where the agency's

interpretation is a reasonable one, the courts "may not substitute [their] own construction of [the]

statutory provision."  <u>Fernandez v. Brock</u>, 840 F.2d 622, 631 (9th Cir. 1988); <u>accord</u>, <u>e.g.</u>, <u>Shalala v.</u>

<u>Guernsey Mem. Hosp.</u>, 514 U.S. 87, 94-95 (1995).

      Similarly, courts must confer "substantial deference" upon "an agency's construction of its

own regulations."  <u>Thomas Jefferson Univ. v. Shalala</u>, 512 U.S. 504, 512 (1994); <u>Lyng v. Payne</u>, 476

U.S. 926, 939 (1986); <u>see</u> <u>also</u> <u>American Train Dispatchers Assoc. v. ICC</u>, 54 F.3d 842, 847 (D.C.

Cir. 1995); <u>Randolph-Sheppard Vendors of America v. Weinberger</u>, 795 F.2d 90, 111 (D.C. Cir.

1986) ("The scope of the statute and the regulations promulgated thereunder should, in the first

instance, be one for the agency charged with its administration.").  The Court's role is not to ensure

that the agency's application of its regulations to the facts is the most natural or logical, the only

possible interpretation, or the one that the Court would have adopted in the first instance, but only that

it is reasonable and consistent with the regulations.  National Trust for Historic Preservation v. Dole, 828 F.2d 776, 782 (D.C. Cir. 1987); Belco Petroleum Corp. v. FERC, 589 F.2d 680, 685 (D.C. Cir. 1978).  The agency is entitled to even greater deference in interpreting its regulations than in reading its statutory mandate.  Wyoming Outdoor Council v. United States Forest Service, 165 F.3d 43, 52 (D.C. Cir. 1998); Puerto Rico Elec. Auth. v. FERC, 848 F.2d 243, 249 (D.C. Cir. 1988); see also Lyng, 476 U.S. at 939.  Thus, the USCIS's interpretation and application of Department regulations must be accepted "unless it is manifestly unreasonable."  Liberty Maritime Corp. v. U.S., 928 F.2d 413, 419 (D.C. Cir.1991) (quoting National Wildlife Federation v. Gorsuch, 693 F.2d 156, 174 (D.C. Cir. 1982)).

USCIS's technical expertise on these issues is entitled to a high level of deference and, because the USCIS decision is supported by a rational basis, should be upheld.  See Community Nutrition Institute, 749 F.2d at 54 (D.C. Cir. 1984); Marsh v. Oregon Natural Resources Council, 490 U.S. 360 (1989); Berlex Laboratories, Inc., v. FDA, 942 F. Supp. 19 (D.D.C. 1996).

B.      Relevant Statute and Regulations

Intelsat sought to have Plaintiff classified as an employment-based immigrant to the United States under INA § 203(b)(2) [8 USC § 1153(b)(2)].  Section 203(b)(2)(A) provides the following:

> Visas shall be made available, in a number not to exceed 28.6 percent of such worldwide level, plus any visas not required for the classes specified in paragraph (1), to qualified immigrants who are members of the professions holding advanced degrees or their equivalent or who because of their exceptional ability in the sciences, arts, or business, will substantially benefit prospectively the national economy, cultural or educational interests, or welfare of the United States, and whose services in the sciences, arts, professions, or business are sought by an employer in the United States.

See id.  The regulation implementing INA § 203(b)(2) is 8 CFR § 204.5(k).  That regulation states, in pertinent part, that "any U.S. employer may file a petition on Form I-140 for classification of an alien

7

under section 203(b)(2) as an alien who is a member of the professions holding an advanced degree or an alien of exceptional ability in the sciences, arts or business." See 8 CFR § 204.5(k).

INA § 204(j) [8 USC § 1154], "flexibility for long delayed applicant for adjustment of status to permanent residence," states that a petition under subsection (a)(1)(D) [sic], (a)(1)(F) for an individual whose application for adjustment of status has been filed and remained unadjudicated for 180 days or more shall remain valid with respect to a new job if the individual changes jobs or employers if the new job is in the same or a similar occupational classification as the job for which the petition was filed. See 8 USC § 1154.

INA § 205 [8 USC § 1155] grants USCIS the discretion to revoke an approved immigrant visa petition under section 204 "at any time, or what [USCIS] deems to be good and sufficient cause." See id. The corresponding regulation, 8 CFR § 205.1 Automatic Revocation, states that "the approval of a petition under section 204 of the Act is *revoked as of the date of the approval upon the written notice of withdrawal* filed by the petitioner, in employment-based preference cases, with any officer of the Service who is authorized to grant or deny petitions." 8 CFR § 205.1(a)(3)(iii)(C) (emphasis added).

Section 245(a) of the INA [8 USC § 1255(a)] provides that "the status of any alien having an approved petition … may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe to that of a lawful permanent resident if: 1) the alien makes an application for adjustment; 2) the alien is eligible to receive an immigrant visa and is admissible to the US; and 3) an immigrant visa is immediately available to him at the time the application is filed." See id. The regulation implementing INA section 245 is 8 CFR § 245, which provides that Section 245.2 addresses the proper filing of the application.

C.    This Court Lacks Jurisdiction to Review USCIS's Dismissal of Plaintiff's Motion to
Reopen or to Reconsider.

The Attorney General is granted "broad discretion" in granting or denying motions to reopen

or reconsider, and, where jurisdiction exists, courts review such adjudications under an "abuse of

discretion" standard.  See INS v. Doherty, 502 U.S. 314, 322-23 (1992); Stewart v. INS, 181 F.3d

587, 595 (4th Cir. 1999) (reviewing denial of motion to reopen for abuse of discretion); M.A. v. INS,

899 F.2d 304, 307 (4th Cir. 1990) (en banc) (denial of motion to reopen reviewed for abuse of

discretion); accord Sevoian v. Ashcroft, 290 F.3d 166, 170-71 (3rd Cir. 2002); Wijeratne v. INS, 961

F.2d 1344, 1348 (7th Cir. 1992); Saldana v. INS, 762 F.2d 824, 827 (9th Cir. 1985), amended, 785

F.2d 650 (1986) (decisions of the Board of Immigration Appeals concerning both motions to

reconsider and motions to reopen should be reviewed for an abuse of discretion).

In order to establish an abuse of discretion, petitioner must show that the agency's decision

was arbitrary and capricious.  Casalena v. INS, 984 F.2d 105, 106 (4th Cir. 1993); Cruz-Lopez v. INS,

802 F.2d 1518, 1522-23 (4th Cir. 1986); Parcham v. INS, 769 F.2d 1001, 1003 (4th Cir. 1985).  Even

when jurisdiction under 28 U.S.C. § 1331 may exist, the APA does not permit judicial review "to the

extent that (1) statutes preclude judicial review; or (2) agency action is committed to the agency

discretion by law."  5 U.S.C. § 701(a).  This exception to judicial review is a "very narrow one,"

reserved for "those rare instances where statutes are drawn in such broad terms that in a given case

there is no law to apply."  Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410 (1971)

(internal quotations omitted).  There is no law to apply if "the statute is drawn so that a court would

have no meaningful standard against which to judge the agency's exercise of discretion."  Heckler v.

Chaney, 470 U.S. 821, 830 (1985).  However, even if the underlying statute does not include

meaningful (or manageable) standards, "regulations promulgated by an administrative agency in

9

carrying out its statutory mandate can provide standards for judicial review." CC Distribs. Inc. v. United States, 883 F.2d 146, 154 (D.C. Cir. 1989) (internal quotations omitted). Inova Alexandria Hosp. v. Shalala, 244 F.3d 342, 346 (4th Cir. 2001).

 The Supreme Court has carved out certain categories of agency action that are exempt from judicial review under the APA because they are committed to agency discretion. "Over the years, we have read § 701(a)(2) to preclude judicial review of certain categories of administrative decisions that courts traditionally have regarded as 'committed to agency discretion.'" Lincoln v. Vigil, 508 U.S. 182, 191 (1993). Expressly included within the categories of actions committed to agency discretion is an agency's refusal to grant reconsideration of an action. Id. at 191-92 (citations omitted).

 Specifically, in the context of immigration law, numerous cases have held that the discretion exercised in adjudicating motions to reopen or motions for reconsideration precludes judicial review altogether. Ekimian v. INS, 303 F.3d 1153, 1158 (9th Cir. 2002) (by finding that Court lacked jurisdiction to consider a motion to reopen, the Court quoted Heckler, supra, for the proposition that "[i]f no judicially manageable standards are available for judging how and when an agency should exercise discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'"); Prado v. Reno, 198 F.3d 286, 292 (1st Cir. 1999) (petitioner's claim is not justiciable because the Board of Immigration Appeals's decision whether to invoke its authority to reopen proceedings is committed to the Board's unfettered discretion); Luis v. INS, 196 F.3d 36, 40 (1st Cir. 1999) (noting that the decision whether to reopen is committed to the agency's "unfettered discretion" and that "the very nature of the claims renders it not subject to judicial review").

 While the cases cited above dealt with reopening removal proceedings under what is now 8 C.F.R. § 1003.2, the analysis applies with equal, if not greater, force to motions for reconsideration or

to reopen under 8 C.F.R. § 103.5.  There are no statutory provisions governing the inquiry.  Further, paragraph (a)(1) of the regulation simply states that the "official having jurisdiction may, for proper cause shown, reopen the proceedings or reconsider the prior decision."  The regulation provides no standards whatsoever for judging how and when a USCIS official should reopen or reconsider a case. While paragraphs (a)(2) and (a)(3) describe general minimum requirements that a motion must include, there is not any provision that states or even suggests that motions that satisfy these general requirements should be granted.  To the contrary, the plain language of the regulation commits the decision to the "unfettered discretion" of the appropriate USCIS official.  Therefore, this Court lacks jurisdiction to review USCIS's dismissal of Plaintiff's motions for reconsideration.

> D.    This Court Lacks Jurisdiction to Review USCIS's Decisions to Grant or Deny
>        <u>Applications for Adjustment of Status</u>

In the instant case, it does not appear that Plaintiff is challenging USCIS's decision to revoke the I-140 Immigrant Visa Petition, but rather, the decision to deny the Application for Adjustment of Status, I-485.  According to 5 U.S.C. § 701(a)(2), an action deriving from discretionary authority committed to an agency by law, falls outside of the court's jurisdiction and is, therefore, not subject to judicial review under the APA.  In this case, the authority to grant or deny an Application for Adjustment of Status has been committed to the Department's discretion, thus the Department's denial of Plaintiff's application is unreviewable.

Whether an agency action is committed to the discretion of an agency depends on the nature of the delegation of authority and the statutory language.  See <u>Webster v. Doe</u>, 486 U.S. 592, 599-600 (1988).  Moreover, where the language of a statute provides no justiciable standard by which a court can review the agency's exercise of its delegated authority, the matter is treated as committed to the agency's discretion.  See <u>Webster</u>, 486 US. at 600 (a statute allowing the Director of the CIA to

11

terminate employment of any employee whenever he found termination "advisable" for the national

interest "fairly exude[d] deference" and thereby precluded judicial review under the APA). In

particular, if the statute uses language that permits an executive official, such as the President or

another agency official, to take action that the official "deems" in the "national interest," these statutes

have been consistently interpreted to preclude judicial review under the APA. See Zhu v. Gonzales,

411 F.3d 292, 295 (D.C. Cir. 2005) (construing a statute, which allows the Attorney General to waive

a requirement if waiver is in the "national interest," as being committed to the discretion of the

Attorney General); but see ANA International, Inc. v. Way, 393 F.3d 886, 891 (9th Cir. 2004)

(adopting a "purely" discretionary standard and holding that revocation of immigrant visa petitions is

not "discretionary" notwithstanding statutory language, in light of fact that BIA case law and agency

practice has limited such statutorily-granted discretion).

In this case, INA § 242(a)(2)(B)(I) [1252(a)(2)(B)(I)][7] expressly deprives this Court of

jurisdiction over the grant or denial of applications for adjustment of status. Section 242(a)(2(B),

entitled "Denials of discretionary relief," provides in pertinent part that: "[n]otwithstanding any other

provision of law, no court shall have jurisdiction to review – (I) any judgment regarding the granting

of relief under section 212(h), 212(I), 240A, or 245 . . ." See id. Because Plaintiff seeks adjustment

of status under Section 245(a), and the INA deprives this Court of jurisdiction to review any judgment

regarding the granting of relief under Section 245(a), thus 242(a)(2)(B)(I) precludes the exercise of

jurisdiction over the petition. See Velasquez-Gabriel v. Crocetti, 263 F.3d 102, 104n. 1 (4th Cir.

---

[7] Since the enactment of the Real ID Act, this jurisdiction-stripping provision applies "regardless
of whether the [administrative] judgment, decision, or action is made in removal proceedings."
REAL ID Act of 2005, Pub. L. No. 109-13, Div. B., section 101(f)(2), 119 Stat. 302, 305 (2005)
(codified as amended at 8 U.S.C. section 1252(a)(2)(B)).

2001).

Even assuming, *arguendo*, that this Court has jurisdiction to review the denial of Plaintiff's Application for Adjustment of Status, the only decision to be reviewed would be a discretionary determination by USCIS, i.e., the revocation of Plaintiff's I-140 pursuant to Section 205 of the INA. Any challenge to USCIS's revocation of petitioner's I-140 Immigrant Visa Petition is barred under Section 242(a)(2)(B)(ii) of the INA, which specifically strips the courts of jurisdiction to review, "any other decision or action of the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General . . ." See id.  Revocation of immigrant visa petitions is covered specifically under section 205 of the INA, which provides that "[t]he Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 [which includes immediate relative petitions] of this title."

Section 205 is specifically the type of discretionary provision contemplated in section 242(a)(2)(B)(ii).  See El-Khader v. Monica, 366 F.3d 562 (7th Cir. 2004) (revocation of immigrant visa petition nonreviewable; in determining what is discretionary, statutory language controls); Jilin Pharmaceutical, USA, Inc. and Zhao v. Ridge, et al., Civil No. 04-5678 (D. N.J. Feb. 25, 2005) (Judge Hochberg), motion for reconsideration denied (May 11, 2005) (specifically, at fn. 8, adopting the reasoning of El-Khader and declining to follow Ninth Circuit ANA decision, infra), 2006 WL 1236830 (C.A. 3 (N.J.)) (affirming district court's holding that it lacked jurisdiction to review revocation of a visa petition).

Because section 242(a)(B)(ii) precludes judicial review, this Court lacks subject matter jurisdiction.  Thus, this matter should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

13

E.    The Administrative Procedure Act Does Not Confer Jurisdiction To This Court To Review USCIS's Denial of Plaintiff's Petition for Adjustment of Status

Plaintiff seeks review of the denial of the I-485, as well as the Agency's determination not to apply AC21 in the instant case.  This Court, however, has no jurisdiction under 5 USC §§ 701, 702, 704 of the APA, or any other provision of the APA, to review agency actions regarding the grant or denial of adjustment of status, because the APA does not independently confer subject matter jurisdiction upon the Court.  See Califano v. Sanders, 430 U.S. 99, 104-05 (1977) (Congress did not intend to provide additional jurisdictional grants through the APA).  Moreover, the APA cannot be viewed as *implying* subject matter jurisdiction to review agency decisions.  See Ocean Breeze Festival Park, Inc. v. Reich, 853 F. Supp. 906, 915 (E.D. Va. 1994) (citing Califano v. Sanders, supra at 105) .

Under the APA, any person "adversely affected or aggrieved" by agency action (see section 702), including a "failure to act," is entitled to "judicial review thereof," as long as the action is a "final agency action for which there is no other adequate remedy in a court." See section 704.  Section 706 of the APA governs the standards to be applied on review.  As the Supreme Court observed in Heckler, supra, at 828, before any review at all may be had, a party must first clear the hurdle of section 701(a).  That section provides that the chapter on judicial review "applies, according to the provisions thereof, except to the extent that - (1) statutes preclude judicial review; or (2) *agency action is committed to agency discretion by law.*" 5 USCS § 701(a)(1)(2) (emphasis added).  As discussed above, the decision to grant or deny adjustment of status pursuant to section 245 of  the INA, or to revoke a visa petition under INA section 205, is left to the Attorney General's discretion, and now the Secretary of Homeland Security, through his delegate, USCIS.  Thus, when USCIS exercises its exclusive discretion over applications for adjustment, or decides to revoke a previously approved petition, such decisions are not subject to federal court review under the APA.  See

generally Ardestani v. INS, 502 U.S. 129, 133-34 (1991) (finding that APA did not apply to immigration proceedings because, as the Court had previously held, its analysis "rest[ed] in large part on the statute's prescription that the INA 'shall be the sole and exclusive procedure for determining the deportability of an alien under this section'") (quoting Marcello v. Bonds, 349 U.S. 302, 309 (1955)).

      F.     Legal Framework Governing the Immigrant Visa Petition Process and the American Competitiveness in the Twenty-First Century Act of 2002

Under section 204(a)(1)(F) of the INA, [8 USC§1154(a)(1)(F)], a petitioner (employer or company) may file a petition (I-140) on behalf of a beneficiary (alien worker). The petitioner has the burden of establishing that the beneficiary qualifies for the benefit sought.[8] See 8 U.S.C.1361; Matter of Brantigan, 11 I. & N. Dec. 493 (BIA 1966); Matter of Ho, 19 I. & N. Dec. 582 (BIA 1988) re-affirming Matter of Cheung, 12 I. & N. Dec. 715 (BIA 1968); K.C.P. Food Co., Inc. v. Sava, 623 F.Supp. 1080, 1083 (S.D.N.Y.1985); Republic of Transkei v. INS, 923 F.2d 175, 178 (D.C. Cir. 1991); Ikea US, Inc. v. INS, 48 F.Supp. 2d 22, 24-5 (D.D.C. 1999). Simply going on record without

---

[8] INA Section 291 provides the following: "Whenever any person makes application for a visa or any other document required for entry, or makes application for admission, or otherwise attempts to enter the United States, the burden of proof shall be upon such person to establish that he is eligible to receive such visa or such document, or is not inadmissible under any provision of this Act, and, if an alien, that he is entitled to the nonimmigrant, immigrant, special immigrant, immediate relative, or refugee status claimed, as the case may be. If such person fails to establish to the satisfaction of the consular officer that he is eligible to receive a visa or other document required for entry, no visa or other document required for entry shall be issued to such person, nor shall such person be admitted to the United States unless he establishes to the satisfaction of the Attorney General that he is not admissible under any provision of this Act."

Applicants for adjustment of status seek assimilation to the position of a person entering the United States for permanent residence, and must satisfy the requirements for admission. See Pei-Chin Tien v. INS, 638 F.2d 1324, 1326 (5th Cir. 1981); Campos v. INS, 402 F.2d 758, 760 (9th Cir. 1968).

supporting documentary evidence is not sufficient for purposes of meeting the burden of proof in these proceedings. See Matter of Treasure Craft of California, 14 I. & N. Dec. 190 (Reg. Comm. 1972).

Once an immigrant visa petition is approved, if the beneficiary is in the United States and a visa number is available, the beneficiary may apply for an adjustment of status to become a permanent resident. See INA § 245(a), 8 USC §1255(a). The Secretary of DHS may revoke any petition for "good and sufficient cause " under section 205 of the INA. There are two kinds of revocation: (1) revocation on notice pursuant to 8 CFR § 205.2, and (2) automatic revocation pursuant to 8 CFR § 205.2. When revocation is automatic, as it is here, the revocation is retroactive to the date of the approval. See 8 CFR 205.2

In this case, Plaintiff filed to adjust his status to a lawful permanent resident on April 29, 2004. The application was based on Intelsat's I-140 (Immigration Visa Petition), which was approved on October 31, 2002, pursuant to INA § 203(b)(2). However, the I-140 was *automatically* revoked on September 17, 2004, when USCIS received a letter from Intelsat requesting withdrawal of the petition, because Plaintiff was no longer employed by Intelsat. On March 11, 2005, USCIS *advised* Plaintiff that the I-140 had been automatically revoked, pursuant to 8 CFR § 205.1 (a)(3)(iii)(C), however, that is not an operative date in this analysis. The regulation clearly states that approval of a petition made under section 204 is revoked as of the date of approval "[u]pon *written notice of withdrawal* filed by the petitioner (Intelsat), in an employment-based preference case under section 203(b)(1)(B), 203(b)(1)(C), 203(b)(2), or 203(b)(3) of the Act." See INA § 205.1(a)(3)(iii)(C) (emphasis added). Since the adjustment application was not filed until April 29, 2004, long after the date that the immigrant visa petition was deemed under the regulations to have been revoked, it could

16

not have been pending for 180 days as required under AC21.

In its NOID the I-485, dated March 5, 2005, USCIS states that Plaintiff did not appear eligible to adjust status since there was no longer an immigrant visa available. Nevertheless, the NOID indicated that the AC 21 would still permit Plaintiff to adjust status if (1) his application for adjustment had been pending for 180 days or more, and (2) if he had a bona fide offer of employment from a new employer in a same or similar occupation. Plaintiff then submitted a request to have his I-485 considered under AC21, and provided evidence of an offer of employment from Bethesda Asphalt & Bituminous Company for the position of Testing Engineer. On June 29, 2005, USCIS denied petitioner's I-485, concluding that the I-485 filed on April 29, 2004, had not been pending 180 days at the time that Intelsat withdrew the I-140 on September 17, 2004, therefore, Plaintiff was ineligible to adjust status under the AC21.[9]

Despite the plain language of 8 C.F.R. 205.1(a)(3)(iii)(C), Plaintiff mistakenly believes that the I-140 Visa Petition was revoked on March 11, 2005, the date that Plaintiff *received notification* of the automatic revocation, rather than the date of the actual automatic revocation, October 31, 2002. By using the later date, Plaintiff claims that he is eligible to adjust status under AC21, because his application for adjustment would have been pending for over 180 days from the time of filing the application (April 24, 2004). Because Plaintiff's application had not been pending for over 180 days, the USCIS properly denied it.

Plaintiff also alleges that USCIS "has administered immigration laws by ad hoc memoranda and unwritten policy rather than by regulation." Compl. at 8. While it is true that there are no

---

[9] Although the denial of the I-485 references the date Petitioner (Intelsat) requested the withdrawal (September 17, 2004), the date of the automatic revocation of the I-140 is October 31, 2002, pursuant to 8 C.F.R. 205.1(a)(3)(iii)(C).

published regulations regarding AC21, it is a fundamental principle of statutory construction that

when words are not defined, they are to be interpreted as taking their ordinary, contemporary,

common meaning.  See, e.g., Perrin v. United States, 444 U.S. 37, 42, (1979); Sutherland Statutory

Construction, 5th Ed., Vol. 2A, § 47.28.  This fundamental principle is, of course, equally applicable

to the construction of regulatory provisions.  In deriving a word's ordinary meaning, the dictionary

definition of the word should be followed unless Congress has provided a specific definition.  Pittston

Coal Group v. Sebben, 488 U.S. 105, 113 (1988).

      In addition to the plain meaning of the statute, there are numerous policy memoranda that

offer detailed guidance in the interim.[10]  One  memorandum that addresses instances where the I-140

has been revoked is the Yates Memorandum, dated August 4, 2003 (hereinafter "Yates

Memorandum") (attached hereto as Exhibit A).  The Yates Memorandum states in pertinent part:

> If the Form I-140 … has been approved and the Form I-485 … had been filed and
> remained unadjudicated for 180 days or more (as measured from the I-485 receipt
> date), the approved I-140 will remain valid even if the alien changes jobs or employers as long as the new offe
> has been pending for less than 180 days, then the approved Form I-140 shall not remain valid with
> respect to a new offer of employment.

See Exhibit A at 2.  Nothing in this language purports to override the clear language of 8 C.F.R.

205.1(a)(3)(iii)(C).  In fact, in Section B of the same Memorandum, entitled, "Provisions in Cases of

Revocation of Approved Form I-140," it states that "if the approval of the I-140 is revoked or

withdrawn before the alien's I-485 has been pending 180 days, the I-140 is no longer valid with

respect to a new offer of employment and the I-485 may be denied."  See id. at 3.  This guidance

simply confirms that the AC21 will only be applied when the I-485 has been pending 180 days or

---

[10] It is noteworthy that Plaintiff fails to cite to any particular policy memoranda ("ad hoc"" or
otherwise) to support his position.  Moreover, Plaintiff fails to cite any case law or to address the
regulation regarding automatic revocation.

more from the date of the revocation or withdrawal of the I-140.

In sum, the evidence in the record supports the automatic revocation of the I-140 under 8 CFR

§205.1(a)(3)(iii)(C) and the denial of the I-485 by USCIS based on the lack of an underlying visa

petition.  Those decisions are not clearly erroneous, irrational, arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with the law.  The action should be dismissed in its

entirety.[11]

## CONCLUSION

For the foregoing reasons, Defendants are entitled to a grant of summary judgment and the

Complaint should be dismissed with prejudice.



Respectfully submitted,


_____/s/_____
KENNETH L. WAINSTEIN, D.C. Bar No. 451058
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar No. 434122
Assistant United States Attorney

---

[11]     Plaintiff asserts that the Court has jurisdiction pursuant to 28 USC § 1331, federal question jurisdiction.  Compl. at 4.  However, he fails to articulate a constitutional challenge to the INA or the AC21.  Section 1331 does not create substantive rights in suits brought against the United States, but rather, only grants subject matter jurisdiction if another statute waives the Government's sovereign immunity.  See Hagemeier v. Block, 806 F.2d 197, 202-03 (8th Cir. 1986).  Subject matter jurisdiction under 28 USC § 1331 covers claims wherein the Agency has violated the APA.  However, as discussed above, this Court does not have APA jurisdiction over this claim.

_____/s/_____
KAREN L. MELNIK, D.C. Bar No. 436452
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C.  20530
(202) 307-0338