UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **FREDERICK MAWALLA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-584 (RMC) |
| ) | |
| **MICHAEL CHERTOFF,** *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Frederick Mawalla is an alien who complains that the Department of Homeland Security ("DHS"), through its constituent agency, the U.S. Citizenship and Immigration Service ("USCIS"), improperly denied his Application to Adjust Status to Permanent Resident. Defendants move for summary judgment, which Mr. Mawalla opposes through his counsel. Because USCIS's denial of Mr. Mawalla's application was based on a pure question of law, not on the exercise of discretion, review is available under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, which allows reversal of agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). USCIS's decision, however, was legally sound and Defendants are therefore entitled to judgment as a matter of law.

**I. FACTUAL BACKGROUND**

The facts are presented in Defendants' Statement of Material Facts With Respect to Which There Is No Genuine Issue ("Defs.' Facts") (Dkt. # 7-1), to which Mr. Mawalla makes no objection. On May 15, 2002, Intelsat Global Service Corporation filed an Immigrant Visa Petition (Form I-140) for Mr. Mawalla, pursuant to section 203(b)(2) of the Immigration and Nationality Act

("INA"). Defs.' Facts ¶ 1. USCIS approved the I-140 on October 31, 2002, thereby allowing Mr. Mawalla to work for Intelsat. *Id.* ¶ 2.

On April 29, 2004, Mr. Mawalla filed a Form I-485, Application to Adjust Status to Permanent Resident. *Id.* ¶ 3. On September 17, 2004 — 141 days later — USCIS received a letter from Intelsat stating that Mr. Mawalla was no longer employed by Intelsat and that it wanted to withdraw its I-140 petition on his behalf. *Id.* ¶ 4. On March 11, 2005, USCIS advised Intelsat that the I-140 petition had been automatically revoked as of the date of its initial approval (October 31, 2002), pursuant to 8 C.F.R. § 205.1(a)(3)(iii)(C). *Id.* ¶ 5. On that same day, USCIS sent to Mr. Mawalla a Notice of Intent to Deny ("NOID") his I-485 application because there was no longer a visa immediately available to him and he was, therefore, ineligible for adjustment of status. *Id.* ¶ 6. The NOID stated that the American Competitiveness in the Twenty-First Century Act of 2002 ("AC21") Section 106(C) (codified at 8 U.S.C. § 1154(j)), would still permit Mr. Mawalla to adjust his status to that of permanent resident if his I-485 application "has been pending for 180 days or more and [he] can establish that [he] ha[s] a bona fide offer of employment from a new employer in a same or similar occupation." *Id.* ¶ 7; Admin. Record ("AR") at 261.

Mr. Mawalla responded on April 6, 2005, requesting that his I-485 application be considered under AC21. Defs.' Facts ¶ 8. He included an offer of employment from Bethesda Asphalt & Bituminous Company for the position of Testing Engineer. *Id.* USCIS denied Mr. Mawalla's I-485 application on June 29, 2005 because the I-485 had been pending for a period of less than 180 days when the withdrawal of the I-140 was requested by Intelsat on September 17, 2004. *Id.* ¶ 9. Without a valid I-140 visa petition, Mr. Mawalla was deemed ineligible to receive an adjusted status under AC21. *Id.*

Mr. Mawalla filed a Motion to Reopen and/or Reconsider on July 18, 2005. *Id.* ¶ 10. USCIS dismissed the motion on August 29, 2005 on the ground that Mr. Mawalla failed to provide new facts or demonstrate that the decision was based on an incorrect application of the law. *Id.* ¶ 11. On September 27, 2005, Mr. Mawalla filed another Motion to Reopen and/or Reconsider regarding the revocation of the Form I-140, but USCIS dismissed that motion on March 13, 2006 for the same reason it dismissed the previous motion. *Id.* ¶¶ 12-13.

Mr. Mawalla filed this action on March 30, 2006. He challenges USCIS's June 29, 2005 denial of his I-495 Application for Adjustment and asks the Court to enter judgment ordering DHS to adjust his status to a lawful permanent resident. Defendants moved for summary judgment on June 21, 2006. That motion has now been fully briefed and is ripe for decision.

## II. LEGAL STANDARDS

A.      **Summary Judgment — Rule 56**.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson*, 477 U.S. at 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.* In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position, *id.* at 252, and may not rely solely on allegations or conclusory statements, *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

    **B.**    **Lack of Subject Matter Jurisdiction — Rule 12(b)(1)**.

Defendants have also moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The Court must accept as true all of the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor. *See Alexis v. District of Columbia*, 44 F. Supp. 2d 331, 336-37 (D.D.C. 1999). But because a Rule 12(b)(1) motion challenges the court's power to hear the claim, the court must give the plaintiff's factual allegations closer scrutiny than would be required for a Rule 12(b)(6) motion. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003).

Moreover, the court is not limited to the allegations contained in the complaint; it may consider materials outside the pleadings to determine whether it has jurisdiction. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). The court may dismiss a complaint for lack of subject matter jurisdiction only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### III. ANALYSIS

The resolution of this motion is fairly simple, although Defendants raise two arguments that require a more thorough analysis than might otherwise be required.

    A.    **Jurisdiction.**

First, Defendants argue that this Court lacks jurisdiction to review USCIS's decisions to deny Plaintiff's motions to reopen and reconsider. Defs.' Mem. at 9-11. The Court rejects this argument because it is the underlying decision denying Plaintiff's I-485 application, not the denials of his motions to reopen, that is presented to this Court for review. Defendants further argue that the Court lacks jurisdiction to review the underlying decision to deny adjustment of status because, under 8 U.S.C. § 1252(a)(2)(B)(i), "no court shall have jurisdiction to review — (i) any judgment regarding the granting of relief under section . . . 1255 . . . ." *Id.* at 11-13. According to Defendants, Plaintiff's application for adjustment of status was made under § 1255 and, as a result, this Court lacks jurisdiction to review it. *Id.* at 12.

This argument may appear correct on the surface, but a review of the case law reveals that it is not. Although the D.C. Circuit has yet to decide the question, other federal courts of appeal have consistently held that § 1252(a)(2)(B)(i) "does not strip courts of jurisdiction to review

nondiscretionary decisions regarding an alien's eligibility for" adjustment of status under § 1255. *Sepulveda v. Gonzales*, 407 F.3d 59, 62-63 (2d Cir. 2005); *see also, e.g.*, *Succar v. Ashcroft*, 394 F.3d 8, 19 (1st Cir. 2005) ("Both the Supreme Court and this court have consistently rejected arguments that Congress has eliminated judicial review of the legal question of interpretation of the statute as to whether an alien is eligible for consideration of relief."); *Iddir v. INS*, 301 F.3d 492, 497 (7th Cir. 2002) ("we find section 1252(a)(2)(B)(i) . . . only bars review of actual discretionary decisions to grant or deny relief"). That is, the jurisdiction-stripping provision in § 1252 does not deprive federal courts of jurisdiction to review pure questions of law. *See Gonzales*, 407 F.3d at 62. Thus, this Court has jurisdiction under 5 U.S.C. § 704 to review USCIS's decision to deny Plaintiff's I-485 application because it was based on the legal conclusion that he was statutorily ineligible for adjustment of status, not on an exercise of discretion. *See id.*

      **B.**      **The Merits of Plaintiff's I-485 Application.**

An alien cannot work in the United States without the appropriate authority from USCIS to do so. One way for an alien to receive permission to work is for an employer to file an I-140 Petition for Alien Worker, describing the special training or talent of a specific alien and the paucity of available similar workers in the United States. *See* 8 U.S.C. §§ 1153(b)(2) and 1154(a)(1)(F); 8 C.F.R. § 204.5. Upon approval of an I-140 Petition, the named alien receives a visa which allows him to work for the named employer. An alien with an I-140 visa can then petition for adjustment of his status to that of permanent resident, through Form I-485. *See* 8 U.S.C. § 1255.

Under the INA and its implementing regulations, it is difficult for an alien with an I-140 visa to change U.S. employers; if the alien switches jobs, his I-140 visa is usually subject to revocation. This is significant because an alien must have a valid I-140 visa to be eligible to have

his status adjusted; loss of the job with the petitioning employer has meant loss of the I-140 visa and loss of the opportunity to become a permanent resident. *See* 8 U.S.C. § 1255(a). In response to the needs of U.S. businesses for skilled aliens, Congress passed AC21. One of AC21's amendments to the INA now allows an alien whose Form I-485 application for adjustment of status has been pending for 180 days or more, and who leaves the job on which the I-140 petition was based, to continue to pursue adjusted status as long as he has another job in the same or similar occupational category. *See* 8 U.S.C. § 1154(j). Having left his position with Intelsat, Mr. Mawalla seeks to take advantage of this provision in AC21 to achieve permanent residency status.

USCIS argues that it was correct to deny Mr. Mawalla's I-485 application because it had not been pending for 180 days when his I-140 visa application was revoked. USCIS bases this argument on 8 C.F.R. § 205.1(a)(3)(iii)(C), which states that an I-140 visa application is automatically "revoked as of the date of approval . . . upon written notice of withdrawal filed by the petitioner . . . ." In its opening brief, USCIS takes the position that Plaintiff's I-140 was revoked on the date it was originally approved — October 31, 2002 — and "[s]ince the [I-485] application was not filed until April 29, 2004, long after the date that the [I-140] visa petition was . . . revoked, it could not have been pending for 180 days as required under AC21." Defs.' Mem. at 16-17. In other words, USCIS argues that because Plaintiff's I-140 was retroactively revoked as of its initial approval date, there is no way that it could have been pending 180 days after he filed his I-485 application, which was filed after the approval/revocation date. *See id.* at 17 n.9.

Plaintiff responds that if this argument is correct, it would render AC21 "completely ineffective and useless" because "all eligible aliens whom the remedial statute sought to protect would be preemptively disqualified from the benefits of AC21." Pl.'s Mem. at 1-2. Plaintiff's

argument probably goes too far, but he is correct that under Defendants' view any alien whose I-140 application is revoked under 8 C.F.R. § 205.1 would always be ineligible for the flexibility benefits of AC21 because an I-485 application can be filed only on or after the date on which I-140 application was retroactively revoked by operation of law. That is, no alien whose I-140 petition is revoked under 8 C.F.R. § 205.1 could ever satisfy the 180-day requirement.

This reading is contrary to Congress's intent in passing AC21. The purpose of § 1154(j) is to give aliens with approved I-140s the flexibility to change jobs if USCIS takes more than 180 days to process their applications for adjusted status. What AC21 says, in essence, is that if an alien's I-485 application has been pending for 180 days, the alien may change jobs without losing the benefit of his previously approved I-140 so long as the new job is in the same occupational category as the old job. Under USCIS's reading of § 1154(j), however, an alien whose I-140 application is revoked under 8 C.F.R. 205.1(a)(3)(iii)(C) would always lose the benefit of the previously approved I-140, regardless of whether the alien changed jobs more than 180 days after he filed his I-485 application, because the I-140 revocation is retroactive to the date of its approval. There is nothing in the language or logic of AC21 to suggest that Congress meant to disqualify categorically such a large group of potentially eligible aliens from AC21's flexibility provision. Indeed, USCIS's reading is contrary to its own policy memorandum, which states that "if the employer withdraws the approved Form I-140 on or after the date that the Form I-485 has been pending 180 days, the approved Form I-140 shall remain valid under the provisions of . . . AC21." Defs.' Mem. Ex. A at p. 3.

Perhaps recognizing that its reading of AC21 is unreasonable, USCIS backs off this position in its reply brief — although it is careful not to abandon completely its initial argument that

Plaintiff's I-140 petition was revoked, for purposes of AC21, a year and half before Plaintiff even filed his I-485 application. *See* Reply Mem. at 4. In order to eliminate any confusion that might be caused by USCIS's lack of clarity, the Court now holds that the correct interpretation of § 1154(j) is the one adopted in USCIS's policy memorandum:

> Pursuant to [AC21], the approval of a Form I-140 employment-based (EB) immigrant petition shall remain valid when an alien changes jobs, if:
>
> - A Form I-485, Application to Adjust Status, on the basis of the EB immigrant petition has been filed and remained unadjudicated for 180 days or more; and
>
> - The new job is in the same or similar occupational classification as the job for which the certification or approval was initially made.

Defs.' Mem. Ex. A at p. 4. Thus, the key date in determining eligibility for the benefit of AC21 is the date on which the alien changes jobs (*i.e.*, the date on which he takes an action that could otherwise make him ineligible for adjustment of status). If the job change occurs 180 days or more after the date on which the alien filed an application for adjustment of status, the alien's previously approved I-140 application will remain in effect with respect to the new job. The automatic date-back regulation for withdrawn I-140 petitions, 8 C.F.R. 205.1(a)(3)(iii)(C), does not bear on the issue. The question is not how long the I-140 petition was on file but whether the I-485 application for adjustment was pending for 180 days or more "when [the] alien change[d] jobs." *Id.*

Now that the legal standard is clear, the Court can apply it to Plaintiff's application. Plaintiff filed his I-485 application on April 29, 2004. Although the record is silent as to when Mr. Mawalla left his employment at Intelstat, the record is clear that on September 17, 2004 Intelstat submitted a letter to USCIS stating that Plaintiff no longer worked there and that it wanted to

withdraw its I-140 petition. (AR 196.) Thus, it is beyond dispute that Mr. Mawalla's job change occurred on or before September 17, 2004 — 141 days after he filed his I-485 application. Because he changed jobs before his I-485 application had been pending for 180 days, Mr. Mawalla's I-140 did not remain valid under AC21. USCIS therefore correctly denied his I-485 application on the ground that he did not have a valid and current visa to support his adjustment of status. The fact that USCIS did not actually adjudicate his application until June 2005 is of no moment because the 180-day provision pertains to the date of the employment change, not the date of adjudication.

## IV. CONCLUSION

Simply put, the single dispositive fact in this case is that Mr. Mawalla left his job at Intelsat fewer than 180 days after he filed his I-485 application. USCIS therefore acted in accordance with law when it refused to apply 8 U.S.C. § 1154(j) to Mr. Mawalla's I-140 visa petition. As a result, Mr. Mawalla was ineligible to adjust status and USCIS properly denied his I-485 application under 8 U.S.C. § 1255(a). Because these actions were not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, Defendants' motion for summary judgment must be granted. A memorializing order accompanies this Memorandum Opinion.

/s/
ROSEMARY M. COLLYER
United States District Judge

DATE: January 5, 2007